IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNICON LIMITED,**<br><br>Address: 85 Great Portland Street, London W1W 7LT, United Kingdom<br>       *Petitioner*,<br><br>v.<br><br>**ISLAMIC REPUBLIC OF AFGHANISTAN and MINISTRY OF ENERGY AND WATER OF AFGHANISTAN,**<br><br>Address: Darulaman Road, Sanatoruim, Kabul, Afghanistan<br>       *Respondents*. | Civil Action No. \_\_\_\_ |

## PETITION TO CONFIRM FOREIGN ARBITRAL AWARD

Petitioner, Unicon Limited ("Unicon"), by and through undersigned counsel, hereby files its Petition and states:

### NATURE OF THE ACTION

1. Arising from a US$1.2 billion World Bank project to facilitate electricity generation, transmission, and distribution across Central and South Asia, Petitioner Unicon brings this action to confirm an arbitral award dated November 23, 2022 (the "Award") in the amount of US$1,127,187 plus interest against Respondent the Islamic Republic of Afghanistan and its Ministry of Energy and Water (together, "Afghanistan"). A true and correct copy of the Award is attached as Exhibit 1 to the Declaration of Akin Alcitepe ("Alcitepe Decl.") which is filed herewith. The Award was rendered in Petitioner Unicon's favor at the conclusion of arbitral proceedings conducted in Paris, France, pursuant to the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules.

2. To date, Afghanistan has paid no portion of the Award.

3. Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention"), as implemented at 9 U.S.C. §§ 201-208, Unicon petitions the Court to (i) enter an order enforcing the Award in the same manner as a final judgment issued by a court in the United States; (ii) enter judgment in Unicon's favor and against Afghanistan in the amount of the Award, with interest and costs as provided therein, as set out in the Prayer below; and (iii) grant such other and further relief as the Court deems just and proper.

## THE PARTIES

4. Petitioner Unicon, incorporated in 2006, is a consulting firm that provides development advisory services in fragile states to bilateral and multilateral aid agencies (including the World Bank Group, the Asian Development Bank, and other development institutions), as well as to governments and private companies. Unicon has worked in more than 80 countries across Europe, Asia, Africa, and the Pacific, focusing on assignments that improve the livelihoods and living conditions of local populations. Unicon is a limited company registered under the laws of England and Wales, located at 85 Great Portland Street, London W1W 7LT, United Kingdom.

5. The Islamic Republic of Afghanistan is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), and 1602-11.

6. The Ministry of Energy and Water is an organ of the Islamic Republic of Afghanistan and part of the foreign state. As noted in the Award, Afghanistan's Ministry of Energy and Water was a "mere organ" of Afghanistan and that Afghanistan is bound by the arbitration agreement and the arbitration. Award ¶ 187. Further, at all times relevant herein,

Afghanistan's Ministry of Energy and Water has been an agency or instrumentality of Afghanistan, pursuant to 28 U.S.C. § 1603(b).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction on two statutory grounds: (i) under 28 U.S.C. § 1330(a), because the Respondent is not entitled to immunity under 28 U.S.C. § 1605(a)(6) and, independently, has expressly waived immunity under 28 U.S.C. § 1605(a)(1); and (ii) under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 203, because this action falls under the New York Convention.

8. Section 1330(a) provides that the district courts shall have original jurisdiction of any nonjury civil action against a foreign state, as defined in 28 U.S.C. § 1603(a), with respect to which the foreign state is not entitled to immunity under 28 U.S.C. §§ 1605-1607 or under any applicable international agreement.

9. Afghanistan is not entitled to immunity under 28 U.S.C. § 1605(a)(6) because this is an action to confirm an arbitral award governed by the New York Convention, a treaty to which the United States is a party, that provides for the recognition and enforcement of arbitral awards. At all times relevant herein, Afghanistan's Ministry of Energy and Water has been an agency or instrumentality of Afghanistan, pursuant to 28 U.S.C. § 1603(b).

10. The Award falls within the scope of the New York Convention and is enforceable under the FAA because: (i) it arose from a commercial legal relationship between the parties; (ii) the parties entered into an agreement in writing to arbitrate disputes arising from that relationship; (iii) the arbitration was conducted in France, a signatory to the New York Convention; and (iv) at least one party is not a citizen of the United States. See 9 U.S.C. § 202.

11. This action also falls within the FSIA's waiver exception, 28 U.S.C. § 1605(a)(1). Special Conditions (SCC) of the contract entered into between the parties (see, Exhibit 2 to the

3

Alcitepe Decl.) state that the arbitral decision "shall be final and binding and shall be enforceable in any court of competent jurisdiction, and the **Parties hereby waive any objections to or claims of immunity** in respect of such enforcement." SCC § 45.1(5)(c). Afghanistan thus expressly waived sovereign immunity from enforcement of the Award.

12. Section 203 of the FAA provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," and confers original jurisdiction on the district courts to hear such actions. 9 U.S.C. § 203. Because this Petition seeks recognition of the Award, § 203 supplies an additional basis for subject matter jurisdiction.

13. This Court has personal jurisdiction over Afghanistan pursuant to 28 U.S.C. § 1330(b), which provides that personal jurisdiction over a foreign state exists as to any claim for relief over which the district courts have jurisdiction under § 1330(a), where service has been affected in accordance with 28 U.S.C. § 1608.

14. Venue is proper in this District under 9 U.S.C. § 204 and 28 U.S.C. § 1391(f), including § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

15. This Petition is timely under 9 U.S.C. § 207 because it is filed within three years of the Award, which was made on November 23, 2022.

## FACTS

**The Dispute and the Award: Afghanistan's Refusal to Pay for Services Rendered**

16. The relationship between the Parties arose in the context of a US$1.2 billion World Bank Group ("WBG") financed Project (the "Project") for the generation, transmission and distribution of electricity between two regions, Central Asia and South Asia. The purpose was the development of a cross-border transmission interconnection linking the countries of the concerned regions to facilitate the transfer of surplus power between the regions. The Project aimed to transfer

4

up to 1,300 megawatts of electricity between countries in Central Asia and South Asia in furtherance of their development. Alcitepe Decl., Exhibit 1, Award, ¶ 27.

17. The complexity of the Project was amplified by the need to satisfy not only financial partners but also the several countries involved, requiring various agreements of all parties on technical, legal, commercial and financial matters and the negotiation of various amendments thereto. *Id.*, ¶ 28.

18. In this context, Afghanistan contracted with Unicon to provide international advisory services in support of the Project, entering into Transaction Advisory Services for Central Asia – South Asia Transmission Project (CASA-1000) for Ministry of Energy and Water in Afghanistan, contract no. MEW/005/92/CQS (the "Contract"). *Id.*, ¶¶ 29-31.

19. Unicon proceeded to perform its work pursuant to the Contract. *Id.*, ¶ 192.

20. Afghanistan refused to pay Unicon for certain amounts due it. *Id.*, ¶¶ 192, 226.

21. Although the Arbitral Tribunal found it unnecessary to decide the issue, *id.*, ¶ 228, it nevertheless reviewed evidence that Afghanistan's refusal to pay was motivated by Unicon's refusal to pay bribes to facilitate payment, *id.*, ¶¶ 41-43, 228 (ii)-(iv).

**The Arbitration Agreement and Proceedings**

22. Article 45 of the Contract's General Conditions states:

> Any disputes between the Parties arising under or related to this contract that cannot be settled amicably may be referred to by either Party to the adjudication/arbitration in accordance with the provisions specified in the [Special Conditions of Contract].

Alcitepe Decl., Exhibit 2, Contract, Art. 45.

23. Article 45.1 of the Special Conditions of Contract further states:

> Disputes shall be settled by arbitration in accordance with the following provisions;

5

1.  Selection of Arbitrators. Each dispute submitted by a Party to arbitration shall be heard by a sole arbitrator or an arbitration panel composed of three (3) arbitrators, in accordance with the following provisions:

(a) Where the Parties agree that the dispute concerns a technical matter, they may agree to appoint a sole arbitrator or, failing agreement on the identity of such sole arbitrator within thirty (30) days after receipt by the other Party of the proposal of a name for such an appointment by the Party who initiated the proceedings, either Party may apply to the Federation Internationale des Ingenieurs-Conseil (FIDIC) of Lausanne, Switzerland for a list of not fewer than five (5) nominees and, on receipt of such list, the Parties shall alternately strike names therefrom, and the last remaining nominee on the list shall be the sole arbitrator for the matter in dispute. If the last remaining nominee has not been determined in this manner within sixty (60) days of the date of the list, the Secretary General of the Permanent Court of Arbitration shall appoint, upon the request of either Party and from such list or otherwise, a sole arbitrator for the matter in dispute.

(b) Where the Parties do not agree that the dispute concerns a technical matter, the Client and the Consultant shall each appoint one (1) arbitrator, and these two arbitrators shall jointly appoint a third arbitrator, who shall chair the arbitration panel. If the arbitrators named by the Parties do not succeed in appointing a third arbitrator within thirty (30) days after the latter of the two (2) arbitrators named by the Parties has been appointed, the third arbitrator shall, at the request of either Party, be appointed by the Secretary General of the International Centre for Settlement of Investment Disputes, Washington, D.C.

(c) If, in a dispute subject to paragraph (b) above, one Party fails to appoint its arbitrator within thirty (30) days after the other Party has appointed its arbitrator, the Party which has named an arbitrator may apply to the International Chamber of Commerce, Paris; to appoint a sole arbitrator for the matter in dispute, and the arbitrator appointed pursuant to such application shall be the sole arbitrator for that dispute.

2.  Rules of Procedure. Except as otherwise stated herein, arbitration proceedings shall be conducted in accordance with the rules of procedure for arbitration of the United Nations

Commission on International Trade Law (UNCITRAL) as in force on the date of this Contract.

3.  Substitute Arbitrators.  If for any reason an arbitrator is unable to perform his/her function, a substitute shall be appointed in the same manner as the original arbitrator.

4.  Nationality and Qualifications of Arbitrators.  The sole arbitrator or the third arbitrator appointed pursuant to paragraphs 1(a) through 1(c) above shall be an internationally recognized legal or technical expert with extensive experience in relation to the matter in dispute and shall not be a national of the Consultant's home country UK,: or of the home country of any of their members or Parties] or of the Government's country.  For the purposes of this Clause, "home country" means any of:

(a)  the country of incorporation of the Consultant [If the Consultant consists of more than one entity, add: or of any of their members or Parties]; or

(b)  the country in which the Consultant's [or any of their members' or Parties'] principal place of business is located; or

(c)  the country of nationality of a majority of the Consultant's [or of any members' or Parties'] shareholders; or

(d)  the country of nationality of the Sub-consultants concerned, where the dispute involves a subcontract.

5.  Miscellaneous.  In any arbitration proceeding hereunder:

(a)  proceedings shall, unless otherwise agreed by the Parties, be held in a country which is neither the Client's country nor the Consultant's country;

(b)  the English language shall be the official language for all purposes; and

(c)  the decision of the sole arbitrator or of a majority of the arbitrators (or of the third arbitrator if there is no such majority) shall be final and binding and shall be enforceable in any court of competent jurisdiction, and the Parties hereby waive any objections to or claims of immunity in respect of such enforcement.

*Id.*, SCC Art. 45.1.

24.     Pursuant to this arbitration agreement, on September 18, 2021, Unicon served Afghanistan with a Notice to Arbitrate. *Id.*, Ex. 1, Award, ¶ 178.

25.     On January 27, 2022, pursuant to the Parties' Contract, the International Chamber of Commerce International Court of Arbitration appointed a sole-arbitrator tribunal (the "Tribunal"). *Id.*, ¶ 68.

26.     On May 8, 2022, Unicon submitted its Statement of Claim. *Id.*, ¶ 90.

27.     On July 1, 2022, the deadline for Afghanistan's Statement of Defense passed without Afghanistan making such submission. *Id.*, ¶¶ 100-01.

28.     On July 16, 2022, the Tribunal issued its Questions to the Parties. *Id.*, ¶ 105.

29.     On August 2, 2022, Unicon submitted its answers to the Tribunal's Questions, and Afghanistan did not make any submission. *Id.*, ¶ 108.

30.     On August 16, 2022, Unicon submitted its Submission on Costs, and Afghanistan did not make any submission. *Id.*, ¶¶ 109-10.

31.     On October 4, 2022, the Tribunal informed the Parties via email that the arbitral proceedings would close on October 24, 2022, granting them until October 23, 2022 to submit any comments on or objections to the conduct of the proceedings. *Id.*, ¶ 119.

32.     The Tribunal found that Afghanistan was "fully aware" of the arbitral proceedings, *id.* ¶ 178; *see also e.g., id.*, ¶ 168 (email response reciting that the authorities of the Ministry of Energy and Water had been "updated and briefed" about the matter), but Afghanistan refused to participate, *id.*, ¶ 11. Afghanistan's refusal persisted throughout the proceedings despite the efforts of the Tribunal to ensure that Afghanistan was kept fully apprised of the proceedings and its

obligations, and repeated extensions of time to respond after Afghanistan had failed to abide deadlines for submissions. *E.g., id.*, ¶¶ 73, 79, 83-84, 86-87, 88, 91-92, 101-03, 105, 108.

33. On November 23, 2022, the Tribunal rendered its Award. *Id.*, at pp. 63-64.

34. The Tribunal found in favor of Unicon's claims for breach of contract, awarding damages and interest thereon as follows: 1) the total amount of the invoice CK16 under Amendment no.3 of USD 444,807; 2) 6% interest per annum on the amount of USD 444,807 under Amendment No. 3 starting from 15 August 2015 until full payment. The amount of this interest as at the date of the award was USD 200,914.87; 3) USD 444,807 as compensation for the breach of its obligation to perform Amendment No.4, with interest thereon of 6% per annum from the date of the award until full payment; and 4) USD 184,800 corresponding to 70% of Unicon's legal representation costs, and USD 52,773 corresponding to the entire amount of Unicon's arbitration costs, with interest thereon from the date of the award until full payment.
*Id.*, at ¶¶ 206, 226, 243.

35. The Tribunal dismissed Unicon's claim for certain additional services. *Id.* at ¶ 227.

36. The Tribunal dismissed Unicon's claim for Harmful Actions, Extortion, and Long-Term Harassment, finding that *inter alia* even if the allegations were true the damages would be duplicative of the damages awarded for Unicon's claims for breach of contract. *Id.* at ¶¶ 228-29.

37. Further, as Unicon was successful on the majority of its claims, the Tribunal awarded Unicon seventy percent of its legal representation and arbitration costs. *Id.* at ¶ 241.

38. To date, Afghanistan has paid no portion of the Award. Alcitepe Decl. ¶ 7.

**Post-Award Demand and Non-Payment**

39. After the Award issued, on August 2, 2023, Unicon wrote to the Ministry of Energy and Water attaching the Award and requesting payment of the awarded sums with interest. *See*, Alcitepe Decl., Exhibit 3.

40. On August 22, 2023, the Embassy of the Islamic Republic of Afghanistan in The Hague replied by email, forwarding a Ministry document and providing Ministry contact addresses, but did not state when payment would be made. *See,* Alcitepe Decl., Exhibit 4.

41. On December 17, 2023, Unicon sent a further request asking when payment would be made; no response followed, and no payment has been made. *See,* Alcitepe Decl., Exhibit 5.

## COUNT I FOR RECOGNITION OF ARBITRAL AWARD

42. Petitioner Unicon repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates them herein by reference.

43. The United States is a contracting party to the New York Convention.

44. The New York Convention has been implemented in the United States by Chapter Two of the Federal Arbitration Act.

45. The Award is governed by the New York Convention because it was rendered in France, another contracting party, and satisfies the requirements of Section 202 of the Federal Arbitration Act. *See* 9 U.S.C. § 202.

46. The Federal Arbitration Act provides that the "court **shall** confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

47. Under 9 U.S.C. § 207, the Court shall confirm the Award unless Respondents establish an Article V defense; none applies here.

48. The Award has not been vacated, set aside, or suspended by any court at the seat (Paris, France) or elsewhere, and Respondents have not obtained any such relief.

49. None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention apply to the Award.

50. Therefore, the Award should be confirmed pursuant to 9 U.S.C. § 207 and judgment in the United States should be entered for Petitioner Unicon.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court enter an order and judgment:

(a) Confirming the Award, including the relief therein, and entering judgment in favor of Unicon and against Afghanistan;

(b) Pursuant to that Award, awarding to Unicon:

   (i) $444,807, together with simple interest at 6% per annum from August 15, 2015 until full payment; plus

   (ii) $444,807, together with simple interest at 6% per annum from November 23, 2022 until full payment; plus

   (iii) $237,573, together with 6% per annum from November 23, 2022 until full payment; and

(c) Awarding Petitioner Unicon costs and expenses, including reasonable attorney fees, incurred in this proceeding;

(d) Awarding post-judgment interest under 28 U.S.C. § 1961; and

(e) Granting such other and further relief as the Court deems just and proper.

Dated: November 20, 2025         Respectfully submitted,

                                 **RIMON, P.C.**


                                 /S/ AKIN M. ALCITEPE
                                 AKIN M. ALCITEPE (D.C. BAR NO. 481389)
                                 1050 CONNECTICUT AVENUE, NW
                                 SUITE 500
                                 WASHINGTON, DC 20036
                                 PHONE: 202-470-5444
                                 EMAIL: AKIN.ALCITEPE@RIMONLAW.COM


                                 *Counsel for Petitioner Unicon Limited*